# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **TENISHA R. WILSON, et al.,** | ) | CASE NO. 1:22-cv-01861 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| **CITY OF SOUTH EUCLID,** | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

This cause is before the Court upon Defendant City of South Euclid's (the "City"), Motion to Dismiss. (ECF No. 6). Plaintiffs Tenisha Wilson and Denman Gordon timely opposed the City's Motion. (ECF No. 7). The City subsequently filed a Reply Brief. (ECF No. 8). For the foregoing reasons, the City's Motion to Dismiss is **DENIED**.

**I.    BACKGROUND**

    **A.    The Rosemere Subdivision and Laurens Avenue**

The Rosemere Subdivision was established in 1916 in then-Euclid Township and initially included five new roads, each 50-feet wide, including Newberry Road and a perpendicular road into which Newberry dead-ends, Laurens Avenue. (ECF No. 1, PageID# 5–6). Plaintiffs own real property (the "Property") on the west corner of Newberry Road and Laurens Avenue.[1] (*Id.* at PageID# 5; ECF No. 1-3, PageID# 31). In 1917, the portion of Euclid Township including the Rosemere Subdivision became the Village of South Euclid (the "Village"), and in 1941, became

---

[1] The Complaint explains that Plaintiff Tenisha Wilson purchased the property and that Plaintiff Denman Gordon later moved in following Plaintiffs' marriage. Some of the actions described in the Complaint were undertaken by Ms. Wilson alone, while other actions are attributed to both Plaintiffs. To avoid confusion and in the interest of brevity, the Court will refer to both Plaintiffs as acting together throughout this Memorandum Opinion and Order.

the City of South Euclid. (ECF No. 1, PageID# 8, 11). During this time, the area around the Rosemere Subdivision developed more subdivisions and roads. (*Id.* at PageID# 8–10). In 1927, the Village took back Laurens Avenue and dedicated the eastern 25 feet to the new Green-Anderson Subdivision. (*Id.* at PageID# 10). Thus, Laurens Avenue was reduced to a 25-foot wide strip of land and considered too small to be a "road" under Village, City, or Cuyahoga County ordinances. (*Id.* at PageID# 8).

### B. The Dispute

Plaintiffs, an African American married couple, purchased the Property around 1996. (ECF No. 1, PageID# 2; ECF No. 6-2, PageID# 120, ¶ 125). Beginning in 2001, the City began issuing citations to Plaintiffs requiring them to repair damage to the portion of Laurens adjacent to the Property (hereinafter referred to as the "Strip"). (ECF No. 1, PageID# 13). Each of these citations required Plaintiffs to repair damage to the Strip at their personal expense, and often threatened criminal charges if the repairs were not completed. (*Id.*). The City regularly inspected the Property and the Strip, and issued citations to Plaintiffs between 2001 and 2008. (*Id.* at PageID# 13–15). In 2008, Plaintiffs learned that the City had vacated the portion of Laurens on the other side of Newberry Road to the parcel across the street in 1961. (*Id.* at PageID# 15).

In January 2010, a water line beneath the Strip broke. (*Id.* at PageID# 15). The City of Cleveland Water Department ("CWD") repaired the water line and later returned to repair the hole in the Strip it created to perform its work. (*Id.* at PageID# 15–16). When CWD returned to repair the hole, its equipment caused additional damaged the Strip. (*Id.* at PageID# 16). CWD met with Plaintiffs and an employee of the City and stated that it would not repair the damage to the Strip because the Strip belonged to the City, not Cleveland. (*Id.*). The City, however, did not repair

2

CWD's damage to the Strip; Plaintiffs did. (*Id.*).

Following the incident with the water line, Plaintiffs began asking the City to vacate the Strip. (*Id.*). Plaintiffs wrote a letter to the City's law director on August 6, 2010 requesting that the City vacate the Strip, but the City did not respond. (*Id.* at PageID# 16–17). In July 2013, Plaintiffs again asked the City to vacate the Strip. (*Id.*). This time, two City employees met with Plaintiffs and told them that the process of vacating the Strip would be expensive and require their neighbors' approvals. (*Id.*). The City also posted a "no trespassing" sign on the Strip at Plaintiffs' request, but the sign was quickly removed. (*Id.*). Plaintiffs allege that the sign was removed following a confrontation between them and an assistant county prosecutor, who is white and allows her dog to relieve itself along the Strip. (*Id.* at PageID# 14, 17–18).

Plaintiffs then involved their elected councilwoman, who brought the issue to the attention of city council. (*Id.* at PageID# 18). During a subsequent council meeting, the City's law director explained that the City does not take care of paper streets like Laurens. (*Id.* at 18–19). In opposition to Plaintiffs' request that the City vacate the Strip, the assistant prosecutor with whom Plaintiffs had argued previously "suggested that the presence of cars on Plaintiffs' driveway indicated the possibility of illicit drug activity on the Property." (*Id.* at PageID# 19). Plaintiffs' councilwoman, who is African-American, then walked out of the meeting. (*Id.*). The City ultimately claimed that Plaintiffs never submitted a "formal" application to vacate the Strip, but the City's ordinances do not provide for a formal process for such a request. (*Id.*).

Plaintiffs initiated a state-court action in the Cuyahoga County Court of Common Pleas in December 2013 for, *inter alia*, abandonment and disparate treatment. (*Id.* at PageID# 2); *Wilson v. City of South Euclid*, No. CV-13-818816 (the "State Court Case"). Thereafter, the City began

sending workers to cut the grass and otherwise take care of the Strip. (*Id.* at PageID# 19). It argued in the State Court Case that it has always taken care of the Strip, in conflict with the numerous citations issued to Plaintiffs over the years. (*Id.* at PageID# 20).

### C. The Federal Action

After considerable litigation on the merits, Plaintiffs voluntarily dismissed the State Court Case on October 14, 2022. Journal Entry, *Wilson v. City of South Euclid*, No. CV-13-818816 (Cuyahoga C.P. Oct. 14, 2022). This federal case was filed the same day. (ECF No. 1). The City filed a Motion to Dismiss on December 6, 2022, based primarily on statute of limitations grounds. (ECF No. 6). Plaintiffs timely opposed the City's Motion on January 5, 2023. (ECF No. 7). The City subsequently filed a Reply Brief on January 19, 2023 (ECF No. 8), and the matter is now ripe for ruling.

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

When ruling on a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Solo v. United Parcel Serv. Co.*, 819 F.3d 722, 793 (6th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))) (cleaned up). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard is not about the plaintiff's probability of success; rather, it merely demands that a plaintiff

4

plead enough facts for the court to reasonably infer that discovery will be productive. *Id.* at 793–94 (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

#### A. Effect of Plaintiffs' Notice of Dismissal on the Relevant Statutes of Limitations.

First, since the City's Motion focuses heavily on the statutes of limitations for Plaintiffs' disparate treatment and abandonment claims, the Court notes that the operative date for determining whether the statutes of limitation have expired is December 12, 2013: the date that Plaintiffs filed the State Court Case. This is because Plaintiffs voluntarily dismissed the State Court Case via Ohio Civ. R. 41(A) after the statute of limitations governing their claims expired; Ohio Rev. Code Ann. § 2305.19 (West 2023)[2] permits a plaintiff to refile her case within one year of a voluntary dismissal after the statute of limitations expires. *Payton v. Rehberg*, 694 N.E.2d 1379, 1385 (Ohio Ct. App. 1997).

Plaintiffs dismissed the State Court Case on October 14, 2022 and refiled the case in federal court the same day. Neither party argues against the application of Ohio's savings statute, thus the Court will analyze the statute of limitations arguments with December 12, 2013 as the operative date.

#### B. Plaintiffs' Disparate Treatment Claim is Timely

The City alleges that Plaintiffs' disparate treatment claim is time-barred because Plaintiffs knew about the basis of the claim as early as 2008 and no later than 2010. (ECF No. 6, PageID# 77–78). The City bases its argument on two statements in the Complaint: (1) Plaintiffs learned

---

[2] Since varying sections of the Ohio Revised Code are discussed throughout this Order, the Court will shorten future references to the Ohio Revised Code as "R.C."

around August 2008 that the City vacated a portion of Laurens to the parcel directly across the street in 1961 (ECF No. 1, PageID# 15, ¶ 67); and (2) Plaintiffs contacted the City's law director on August 6, 2010 about vacating the Strip, but received no response (*id.* at PageID# 17, ¶¶ 81– 83). Plaintiffs respond that the City did not tell Plaintiffs it would not vacate the Strip until the summer and fall of 2013. (ECF No. 7, PageID# 168; ECF No. 1, PageID# 17–20, ¶¶ 86–103).

The parties agree that the statute of limitations applicable to Plaintiffs' disparate treatment claim is two years, as provided in R.C. § 2305.10(A). This limitations period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855–56 (6th Cir. 2003) (quoting *Kuhnke Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). Courts determine the accrual of claims based on "the event that should have alerted the typical lay person to protect his or her rights." *Id.* (citing *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

In *Basista Holdings v. Ellsworth Twp*, No. 4:15-cv-136, 2016 WL 4543175, *4 (N.D. Ohio Aug. 31, 2016), this Court addressed a citizen's claims against Ellsworth Township relating to a zoning classification of the plaintiff's property filed in 2014. Finding that the claim was barred by the same statute of limitations applicable here, the Court explained that, when the township "had taken the position" in 2009 that it gave the plaintiffs a zoning permit in 2007 erroneously, the plaintiffs had "reason to know of the injury" serving as the basis of their action in 2009. *Id.* Since the complaint was not filed until 2014, the action was dismissed on statute-of-limitations grounds. *Id.*

For the same reason, this case is within the limitations period. Plaintiffs could not have known about their disparate treatment claim until the City "took a position" with regard to

6

Plaintiffs' request that it vacate the Strip. This is because Plaintiffs' independent knowledge that the City vacated part of Laurens to a neighboring parcel does not, alone, contain the elements of a disparate treatment claim; Plaintiffs must know about the City's decision to treat them differently than their neighbor and deny their request to vacate before they can be charged with notice of a claim for disparate treatment. That knowledge could only be acquired through the City's refusal to vacate the Strip to Plaintiffs, which the City did not communicate to Plaintiffs until 2013. Since Plaintiff's disparate treatment claim accrued in 2013, by virtue of the savings statute, it is not time-barred.[3]

### C. Plaintiffs State a Claim for Abandonment of Real Property.

#### 1. *Plaintiffs' abandonment claim was filed within the time prescribed by R.C. § 2305.04—the applicable statute of limitations*

The City also attacks Plaintiffs' abandonment claim on statute-of-limitations grounds. (ECF No. 6, PageID# 70). The City claims that R.C. § 2305.09(D) and its four-year limitations period applies to Plaintiffs' abandonment claim, because the claim concerns "an injury to the rights of the plaintiff[s]." (*Id.* at PageID# 70–72; ECF No. 8, PageID# 171–72). Plaintiffs respond that the 21-year limitations period prescribed by R.C. § 2305.04 is the correct statute of limitations, because their abandonment claim is not based on an injury to their rights, but rather the Village's

---

[3] To the extent that a difference in claims from the State Court Case to this action could impact the application of Ohio's savings statute, it is also worth noting that Plaintiffs' 2018 Second Amended Complaint in the State Court Case plainly alleges disparate treatment analogous to their claim in this action. (*See* ECF No. 6, PageID# 79; ECF No. 8, PageID# 175 ("Plaintiffs bring for the first time a claim for disparate treatment pursuant to the Equal Protection Clause under the 14th Amendment of the U.S. Constitution."; ECF No. 6-2, PageID# 121–124, ¶¶ 132–48)). The Court of Common Pleas and Eighth District Court of Appeals both addressed Plaintiffs' state-court "disparate impact" claim as one for disparate treatment under the Equal Protection Clause. *See* Journal Entry at 2–3, *Tenisha Wilson v. City of South Euclid*, No. CV-13-818816 (Cuyahoga C.P. May 14, 2015) (acknowledging and addressing Plaintiffs' "disparate treatment" claim); *Wilson v. City of S. Euclid*, 8th Dist. Cuyahoga No. 103067, 2016-Ohio-3258, ¶¶ 37–39 (analyzing Plaintiffs' "disparate treatment" claim in the context of the Equal Protection Clause).

choice in 1927 to forever prevent Laurens from becoming wide enough to satisfy the City's minimal road width requirements. (ECF No. 7, PageID# 162–63). Plaintiffs also claim that actions for declaratory judgment seeking abandonment and reversion of property are not governed by any particular statute of limitations.

First, the Ohio Supreme Court has consistently held that all civil actions are governed by some statute of limitations. *Browne v. Artex Oil Co.*, 158 Ohio St.3d 398, 2019-Ohio-4809, 144 N.E.3d 378, ¶¶ 30–33 (applying the 21-year limitations period prescribed by O.R.C. § 2305.04 to a claim for termination of an oil and gas lease). Ohio Revised Code §2305.03(A), which includes statutes of limitations for particular civil actions and a catchall limitations period of ten years for all others, embodies the Ohio General Assembly's intent that all "civil actions are subject to a statute of limitations." *Id.* at ¶ 33. To the extent that Plaintiffs claim that no limitations period applies to their request for a declaration that the Strip is abandoned, they are incorrect.

Yet, *Browne* is also instructive as to the application of the 21-year limitations period set forth in § 2305.04 to this case. In *Browne*, the parties disagreed over whether § 2305.04 or § 2305.06 governed the limitations period applicable to the termination of an oil and gas lease by operation of law due to nonproduction. *Id.* at ¶ 42. The Court found that such a claim is "akin to a quiet-title action" governed by § 2305.04, rather than an action for termination of the lease based on the lease's terms, governed by § 2305.06. *Id.*

Like *Browne*, Plaintiffs' case is more analogous to an action to quiet title than it is for "an injury to the rights of the plaintiff." Paragraphs 125 through 136 of the Complaint describe Plaintiffs' abandonment claim as an abandonment of real property and reversion to Plaintiffs based upon actions taken by the Village, and later the City, between 1927 and 1948: the same basis for

8

relief sought by the *Browne* plaintiffs. It states that Plaintiffs are the successors in interest to the original landowner and are thus entitled to a reversion of the Strip based on the City's nonuse and its statements that it "does not care for paper streets." (ECF No. 1, PageID# 24, ¶ 134). Indeed, that Plaintiffs have no "rights" associated with the Strip is the problem that this action attempts to solve. Neither the City's Motion nor its Reply Brief address the factual basis of Plaintiffs' abandonment claim, nor does it support its argument in favor of applying R.C. § 2305.09(D) with citations to case law. Therefore, the Court will apply the 21-year limitations period prescribed by R.C. § 2305.04.

This Court need not reach the question of when, precisely, Plaintiff's abandonment claim accrued. Plaintiffs have owned the property since approximately 1996. (ECF No. 6-2, PageID# 120, ¶ 125). This is 17 years prior to the filing of the State Court Case in 2013. Assuming that the statute of limitations began on the date that Plaintiffs acquired the property, it ran out in 2017. Even assuming, as the City does (*see* ECF No. 6, PageID# 71), that Plaintiffs' claims accrued in 2001, the limitations period expired in 2022, which is the same year that the state-court case was dismissed and this action was filed. Either the savings statute permitted the filing of this federal case because the limitations period expired before October 14, 2022, or Plaintiffs were still within the statute of limitations to file this action for abandonment on October 14, 2022. Therefore, regardless of the calculation method used to determine the applicable limitations period under R.C. § 2305.04, this action is timely.

### 2. *Political subdivision immunity does not apply to a claim for declaratory judgment.*

The City's Motion also alleges that it is immune from Plaintiffs' abandonment claim under R.C. § 2744.02(A)(1), which provides political subdivisions with immunity from claims

concerning "injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." (ECF No. 6, PageID# 72–73). Plaintiffs argue that political subdivision immunity does not apply to claims for declaratory judgment. (ECF No. 7, PageID# 163–64).

Plaintiffs are correct; R.C. § 2744.02(A)(1) bars political subdivision liability only as to "tort actions *for damages*." *Rocky River v. Lakewood*, 8th Dist. Cuyahoga No. 90908, 2008-Ohio-6484 (¶ 12); *Barrow v. Vill. Of New Miami*, 2018-Ohio-217, 104 N.E.3d 814, ¶ 16 (12th Dist.) ("Ohio courts have uniformly held that while sovereign immunity bars tort claims for money damages, it has no application in actions for equitable relief."); *State ex rel. Fatur v. Eastlake*, 11th Dist. Lake No. 2009-L-037, 2010-Ohio-1448, ¶ 36 (finding that the City of Eastlake was not immune from claim for injunctive and declaratory relief).

Plaintiffs' abandonment claim seeks "a judgment in their favor declaring that the City, through its predecessor Village or otherwise, abandoned or otherwise lost any rights it had to use the Strip for roads or otherwise, and that Plaintiffs are the true owners of the Strip." (ECF No. 1, PageID# 25, ¶ 136). Since Plaintiffs do not seek money damages as the result of the City's purported abandonment of the Strip, political subdivision immunity does not bar Plaintiffs from asserting this claim against the City.

### 3. *Neither Plaintiffs' Complaint, nor the City's Motion, alleges that the City owns or operates the utilities beneath Laurens Avenue.*

Lastly, the City claims that Plaintiffs' abandonment claim should be dismissed because the Complaint admits that public utilities run beneath the Strip. (ECF No. 6, PageID# 75–77). Plaintiffs counter that the City does not own or operate the water lines; rather, the Complaint

10

alleges that the City of *Cleveland* installed the water lines in 1948, after the Strip had been abandoned by the City of South Euclid, and continues to operate and service those water lines—to the City's exclusion—to this day. (ECF No. 7, PageID# 164–65).

Both parties cite *Dulebohn v. Vill. Of Waynesfield*, 3d Dist. Auglaize No. 2-20-05, 2020-Ohio-4340, as supporting their position. *Dulebohn* stands for the principle that a municipality's use of utilities below an otherwise unused street bars any claim for abandonment. *Id.* at 31 (citing *Anderson v. Vill. Of Alger*, No. 6-98-10, 1999 WL 378377 (Ohio Ct. App. May 14, 1999)). In *Dulebohn*, the Court of Appeals determined, on summary judgment, that the plaintiff's abandonment claim failed factually and as a matter of law because Waynesfield used the alleyway in question by virtue of a sanitary sewer beneath the alleyway. *Id.* at ¶ 32. So long as "the municipality exercise[s] some dominion over" the disputed property, the court held that a claim for abandonment must fail. *Id.* at ¶ 31.

This case—at least at this stage of the proceedings—is distinguishable from *Dulebohn*. Here, the Complaint alleges that the City of Cleveland owns the water line beneath the Strip. (ECF No. 1, PageID# 15). The Complaint further explains that Plaintiffs met with both CWD *and* an employee of the City concerning damage to the Strip caused by a CWD truck; "the [Cleveland] Water Department indicated that the Strip was owned by the City and that the Water Department would not bear responsibility for the cost or labor needed for repairs." (ECF No. 1, PageID# 16, ¶ 77). The City's Motion claims that the water line proves the City's use of the Strip, but neither the Complaint nor the City itself connects the City with the operation or service of the water line. (*See* ECF No. 6, PageID# 75, 77).

Taking the allegations in the Complaint as true, this Court cannot dismiss Plaintiffs'

11

abandonment claim because there is no allegation that the City owns or operates the water line beneath the Strip. The City cannot claim that it uses the Strip by virtue of a utility line owned and operated by another municipality; where *Dulebohn* requires that the municipality attempting to avoid an abandonment claim make some use of the land in question, there are no allegations nor facts before this Court suggesting that the City is associated with the water line beneath the Strip. In fact, the allegations in the Complaint regarding previous repairs to the water line tend to indicate that the City is not so associated. As such, dismissal of Plaintiffs' abandonment claim based on the presence of public utilities is inappropriate.

IV. CONCLUSION

Neither Plaintiffs' disparate treatment claim nor abandonment claim have been filed outside the applicable statute of limitations. Moreover, political subdivision immunity does not apply to requests for declaratory judgment, and the Complaint plainly alleges that the utilities below the Strip are owned and operated by the City of Cleveland, not the City of South Euclid. Accordingly, the City's Motion to Dismiss (ECF No. 6) is **DENIED.** The City is directed to file its responsive pleading in accordance with Fed. R. Civ. P. 12(a)((4)(A).

**IT IS SO ORDERED.**

**Date: September 13, 2023**

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**