UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TENISHA R. WILSON, et al., | ) CASE NO. 1:22-cv-01861 |
| Plaintiffs, | ) JUDGE CHARLES E. FLEMING |
| v. | ) |
| CITY OF SOUTH EUCLID, | ) |
| Defendant. | ) **MEMORANDUM OPINION AND ORDER** |

Before the Court is Tenisha Wilson and Derman Gordon's ("Plaintiffs") Motion for Summary Judgment against the City of South Euclid ("City"). (ECF No. 29, PageID #477). The City timely opposed Plaintiffs' motion. (ECF No. 31, PageID #673). Plaintiffs filed a reply brief in support of their motion. (ECF No. 36, PageID #1066). For the reasons stated below, Plaintiffs' motion is **GRANTED**.

Also before this Court is the City's competing Motion for Summary Judgment against Plaintiffs. (ECF No. 28, PageID #300). Plaintiffs timely opposed the City's motion. (ECF No. 32, PageID #850). The City filed a reply brief in support of its motion. (ECF No. 35, PageID #1031). For the reasons stated below, the City's motion is **GRANTED IN PART AND DENIED IN PART.**

## I. BACKGROUND

### A. The Rosemere Subdivision and Laurens Avenue

The Rosemere Subdivision was created in 1916 on land owned by S.H. Kleinman Realty Co. ("Kleinman") in what was Euclid Township, then the Village of Euclid, and now the City of

1

South Euclid (collectively, the "City").[1] (ECF No. 29-1, PageID #481–485). Kleinman dedicated four 50-foot-wide streets running north to south and one 25-foot-wide street running east to west, Laurens Avenue ("Laurens"), "to the public for highways" in the Rosemere Plat. (ECF No. 1-4, PageID #34). The County Board of Commissioners accepted Kleinman's dedication of land "for road purposes" on July 19, 1916. (ECF No. 29-3, PageID #523). In 1916, the minimum width of any road in Cuyahoga County was 30 feet. (ECF No. 29-4, PageID #535).

The plat maps show that Laurens was meant to be expanded from 25 to 50 feet using the land south of and contiguous to the subdivision. (ECF No. 29-1, PageID #484; ECF No. 1-4, Rosemere Subdivision, PageID #35). However, that land became backyard space when the City approved the Green Anderson ("GA") subdivision in 1927. (ECF No. 29-1, PageID #484; ECF No. 1-9, GA Subdivision, PageID #44; ECF No. 29-8, completed plat map, PageID #610; 617–18). A water main was installed under Laurens in 1958. (ECF No. 33, PageID #866). People use Laurens as a walk-through path, including children who use it to travel to and from school. (ECF No. 28-4, PageID #463–471). Laurens is now a patchily paved, mostly grassy strip of land next to Plaintiffs' home. (ECF No. 31-1, PageID #744–46).

### B. The Dispute

Plaintiffs purchased property at the corner of Newberry and Laurens around 1996. (ECF No. 29-5, PageID #554). In 2001, the City began issuing citations to Plaintiffs, requiring them to maintain and repair damage to the portion of Laurens abutting Plaintiffs property (the "Strip") at their personal expense. (*Id.* at PageID #556–57).

---

[1] The municipalities classification as a city, village or township is not relevant to the analysis or either of the parties' arguments. For clarity, the Court refers to Euclid Township, the Village of Euclid, and the City of South Euclid as "the City," and acknowledges that the Village and City represent only a portion of the original Township. The Village of South Euclid was incorporated in 1917, then became a City in 1941.

In January 2010, a water line beneath the Strip broke. (*Id.* at PageID #563). The City of Cleveland Water Department ("CWD") repaired the water line and later returned to repair the hole it created in the Strip to perform its work. (*Id.*). When CWD returned to repair the hole, its equipment caused additional damage to the Strip. (*Id.* at PageID #564). Plaintiffs allege that CWD stated that it would not repair the damage because the Strip belonged to the City, not Cleveland. (*Id.* at PageID #565). The City, however, did not repair CWD's damage to the Strip; Plaintiffs did. (*Id.* at PageID #566).

In August 2010, Plaintiffs requested that the City vacate the Strip, but the City refused. (*Id.*). After multiple meetings between Plaintiffs and City employees, the City told Plaintiffs that it could only vacate a portion of the Strip, but such vacation would be costly because each neighbor would need to be contacted before a vacation could occur. (*Id.* at PageID #568). Sometime after this, The City posted, but quickly removed, a "no trespassing sign" on Plaintiffs' property. (*Id.* at PageID #568–69). Plaintiffs allege that the City removed the sign after a confrontation between Plaintiffs, who are African American, and an assistant county prosecutor, who is Caucasian. (*Id.*).

In 2013, Plaintiffs involved their elected councilwoman to bring the issues with the Strip to City council's attention. (*Id.* at PageID #570–71). The assistant prosecutor that Plaintiffs previously argued with opposed Plaintiffs' request that the City vacate the Strip at a subsequent council meeting; she also "suggested that the presence of cars on Plaintiffs' driveway indicated the possibility of illicit drug activity on the property." (*Id.* at PageID #571).

Plaintiffs first commenced suit in December of 2013. *Wilson v. City of South* Euclid, No. CV-13-818816 (Cuyahoga C.P. filed Dec. 12, 2013). Plaintiffs allege that the City started taking care of the Strip after Plaintiffs initiated litigation. (ECF No. 32, PageID #862). The City alleges that it has taken care of the Strip before and after the Plaintiffs commenced the litigation and has

3

never let it deteriorate to a point where use became impossible for 21 years. (ECF No. 31, PageID #677). After considerable litigation on the merits, Plaintiffs voluntarily dismissed the State Court Case on October 14, 2022. Journal Entry, *Wilson v. City of South Euclid*, No. CV-13-818816 (Cuyahoga C.P. Oct. 14, 2022). This federal case, seeking the same relief was filed the same day. (ECF No. 1).

### C.  THE MOTIONS

Plaintiffs seek summary judgment on their abandonment claim. Plaintiffs argue that Kleinman's dedication of Laurens for road purposes granted the City a fee simple determinable interest in Laurens. (ECF No. 29-1, PageID #489). According to Plaintiffs, the contingency that the City use Laurens for "road purposes" and "highway purposes" means the City must use Laurens as a "road" that is at least 30 feet wide in accordance with GC § 6861 and for the purposes evident from Kleinman's dedication of the Rosemere plat. (*Id.* at PageID #492). However, when the City approved the GA plot in 1927, it limited Laurens so that it could not be wider than 25 feet. (*Id.* at PageID # 491); thus, the City's fee simple determinable interest in Laurens (including the Strip) reverted to the landowners as a matter of law. (*Id.* at PageID #491). Alternatively, Plaintiffs argue that, if the City's interest in Laurens did not revert in 1927, then it reverted in 1948 because the City signaled its intent to abandon Laurens in 1927, and 21 years passed during which the City failed to use Laurens for road purposes. (*Id.* at PageID #488).

The City also seeks summary judgment on Plaintiff's abandonment claim. (ECF No. 28, PageID #309). The City argues that Kleinman's dedication of Laurens was not a fee simple determinable, but a fee simple absolute (with no right of reversion). (ECF No. 31, PageID #688). Moreover, the City asserts that abandonment cannot occur when a municipality exercises some control over the land at issue—here, its water line. (ECF No. 28, PageID #311).

4

According to the City, its approval of the GA plot is immaterial because Laurens does not need to be wider than 25 feet to be used for "road purposes" or "highway purposes" under *Smith*, *Ziegler*, and the Ballentine Law Dictionary. (ECF No. 35, PageID #1033–34); *see Smith v. Cent. Power Co.*, 137 N.E. 159, 163 (Ohio 1921); *Ziegler v. Ohio Water Serv. Co.*, 247 N.E.2d 728, 730 (Ohio 1969); Highway, *Ballentine's Law Dictionary* (3d ed. 2010). Even if the 1927 GA plot approval gave the landowner at the corner of Newberry and Laurens the right to take back that land, the City claims that ownership did not transfer back as a matter of law; instead, the property owner at that time would have had to take affirmative steps to retake their ownership interest in that property. (ECF No. 31, PageID #688).

Thus, the City's position is that the property owner's failure to exercise the right to retake control of that property, in concert with the City's installation of a water main beneath Laurens and the Public's use of Laurens as a footpath, demonstrates the City's lack of intent to abandon that property. (*Id.*). According to the City, the doctrine of laches and the statute of limitations bars the Plaintiffs' attempt to claim that the city abandoned the property now, 67 years after the City installed the water main beneath Laurens. (*Id.* at PageID #686–87).

The City seeks summary judgment on Plaintiff's equal protection claim, as well. (ECF No. 28, PageID # 315–17). Plaintiffs argue that the City intentionally treated them differently than similarly situated individuals, without a rational basis and based on their race. (ECF No. 1, PageID #22). The City argues that the vacation of another part of Laurens (across Newberry) is inapposite because the land in that vacation (to Dawson) had no connection to the water system and did not provide the same public benefit to foot and bicycle traffic. (ECF No. 28, PageID #304). That vacation also occurred in 1961—more than a half-century before the events at issue in this case. (*Id.*).

Plaintiffs did not move for summary judgment on their equal protection claim. (ECF No. 29). However, they claim that the City cannot obtain summary judgment on that claim because Plaintiffs can demonstrate relevant similarity and animus or ill-will. (ECF No. 32, PageID #858–864). Plaintiffs argue that the facts support a finding of relevant similarity between their request that the City vacate the Strip and Dawson's request in 1961, since both asked the city to vacate a portion of Laurens (ECF No. 32, PageID #859); the Strip is directly across Newberry from the portion of Laurens that the City vacated to Dawson (*id.*); both requested that the City vacate a similar sized area (*id.*); and the six adjoining property owners whose land abutted the portion of Laurens that the City vacated to Dawson was greater than the five property owners whose land abuts the Strip. (*Id.*).

Plaintiffs also identified differences between themselves and Dawson: Dawson was white, and Plaintiffs are African American. (ECF No. 32, PageID #860). The City did not require Dawson to notify all property owners with land abutting the property that the vacation would affect but insisted that Plaintiffs do so. (*Id.*). Plaintiffs also argue that they have relevant similarity with four property owners that the City vacated property-abutting land to while maintaining an easement for utilities: (1) in 1975, the City vacated a portion of a 25-foot portion of a road to three adjoining property owners but preserved a drainage easement and utility lines (ECF No. 32, PageID #861); (2) in 1986, the City vacated a portion of a 25-foot-wide road but preserved a drainage easement and utility lines (*id.* at PageID #861); (3) in 1991, the City vacated a portion of a road to abutting property owners but conditioned that vacation on the property owners conveying an easement for public utilities to the City (*id.*); and (4) in 1992, the City vacated a portion of a road but reserved utility easements in the vacated portions of the road (*id.*). Plaintiffs assert that the City's

unwillingness to do the same for them demonstrates that the City is treating them differently without a rational basis. (*Id.* at PageID #860–61).

Plaintiffs also argue that animus or ill-will motivated the City in its dealings with Plaintiffs. (ECF No. 32, PageID #862). Plaintiffs allege that the City allowed the assistant county prosecutor, who accused Plaintiffs of being racist and engaging in criminal activity, to guide its decision not to vacate the Strip. (ECF No. 32, PageID #862).

## II. MOTION STANDARD

Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party making or opposing a Rule 56 motion must support her assertion that "a fact cannot be or is genuinely disputed" by

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a

verdict." *Id.* at 252. Generally, "[c]redibility judgments and weighing of the evidence are prohibited." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). The movant can meet this burden by either (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*. If the moving party meets its burden, then the non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (quoting *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). Rather, the nonmovant must point to specific facts in the record that create a genuine issue of material fact for trial. *Id.* (citing *Fulson*, 801 F. Supp. at 4).

### III. DISCUSSION

#### A. Abandonment

Plaintiffs allege that Kleinman's dedication of land for Laurens granted the City a fee simple determinable interest in Laurens, with the condition that the City use that land for road purposes. (ECF No. 29-1, PageID #489–90). In 1927, the City's approval of the GA Plot limited Laurens' width to 25 feet—five feet short of Cuyahoga County's 30-foot minimum road width. (*Id.* at PageID #492). Plaintiffs argue that because the Laurens dedication was in fee simple determinable with the condition the City use it for road purposes, ownership of Laurens automatically reverted after the City failed to satisfy this condition. (*Id.* at 493).

The City argues that abandonment cannot occur when a municipality exercises some control over the land at issue. (ECF No. 28, PageID #311). Here, the City purportedly exercised

8

control over Laurens when it installed and used a water main beneath it, and this use should be sufficient to grant the municipality summary judgment on plaintiff's abandonment claim. (*Id.* at PageID #309–12). The City also argues that Kleinman's dedication granted a fee simple absolute because the grant did not include necessary temporal words like "until," "during," or "so long as."

To prove abandonment, Plaintiffs must prove 21 years of nonuse and the municipality's intent to abandon the street. *State ex rel. Shemo v. Mayfield Hts.*, 765 N.E.2d 345, 354–55 (Ohio 2002); *Wyatt v. Ohio Dep't of Transp.*, 621 N.E.2d 822, 824–25 (Ohio Ct. App. 1993). A significant time of nonuse may prove intent to abandon. *Snyder v. Monroe Twp. Trs.*, 674 N.E.2d 741, 750–51 (Ohio Ct. App. 1996). A plaintiff may show that a municipality abandoned land held in trust for street purposes if the municipality did not use that land for street purposes for at least 21 years. *Chillicothe Bowling Lanes v. Kitchen Collection*, No. 94CA2066, 1995 WL 495959, at *12–15 (Ohio Ct. App. 1995). Other facts and circumstances can strengthen or negate whether 21 years of nonuse is an indication of the intent to abandon the property. *Id*. (citing *Kiser v. Bd. of Comm'rs of Logan Cnty.*, 97 N.E. 52 (Ohio 1911) (adverse possession by the proprietor); *Tudor Boiler Mfg. Co. v. I & E Greenwald Co.*, 16 Ohio C.D. 556 (Ohio Cir. Dec. 1904) (stated intent not to abandon the roadway at issue)).

> i. *Kleinman's dedication of Laurens for road purposes granted the City a fee simple determinable interest in Laurens.*

A fee simple determinable is a fee-simple estate to a person and his heirs, with a contingency attached. *Koprivec v. Rails-to-Trails of Wayne Cty.*, 102 N.E.3d 444, 452 (Ohio 2018). If the contingency happens (or does not happen depending on the nature of the contingency), then the estate ends automatically. *Id.* The grantor or his heirs do not need to take any affirmative action to end the estate. *Id.* Generally, words of duration distinguish a fee simple determinable

9

from other estates; words like "until," "during," or "so long as" are recognized as creating a fee simple determinable estate. *Id.*

When a person dedicates land to a municipality to use for road purposes, however, and the municipality accepts that land, a fee simple determinable interest in that land vests in the municipality, which it then holds in trust for road use only, regardless of the granting clause. *Callen v. Columbus Edison Elec. Light Co.*, 64 N.E. 141, 143 (Ohio 1902); *State ex rel. Shemo v. City of Mayfield Hts.*, 765 N.E.2d 345, 354 (Ohio 2002). A municipality does not have a fee simple absolute interest in land that is dedicated for use as a road. *Sorg v. Vill. of Oak Harbor*, 151 N.E. 800, 800 (Ohio Ct. App. 1925).

The City claims that Ohio courts have misinterpreted *Callen* for more than a century by failing to mention that a dedication for land creates "a determinable *or qualified* fee." 64 N.E. at 143. The City does not explain what it believes to be the difference between these two estates; a "qualified fee" is also known as a determinable fee. 28 Am. Jur. 2d *Estates* § 26 (Nov. 2025). Though acknowledging that *Callen* has never been overruled, the City argues that, since the language of the dedication here omits words like "until," "during," or "so long as," this Court should conclude that the dedication was a fee simple absolute. (ECF No. 31, PageID #688) (quoting *Koprivec v. Rails-To-Trails of Wayne Cnty.*, 102 N.E.3d 444, 452 (Ohio 2018)).

The City's position is wrong for two reasons. First, *Koprivec* did not concern dedication of land for highways; instead, it involved dedication of land for a railroad. *Id.* Second, the dedication in *Callen*, from which the temporal words above are conspicuously absent, mirrors the dedication here. *Callen*'s holding concerned a dedication of "land designated or intended for streets." *Id.* Kleinman dedicated Laurens "to the public for highways," (ECF No. 1-4, PageID #34), and the Cuyahoga County Board of Commissioners accepted Laurens "for road purposes."

10

(ECF No. 29-3, PageID #523). This dedication granted the City a fee simple determinable interest in Laurens, with the contingency being that the City must use it for road purposes. *Callen*, 64 N.E. at 143.

For purposes of abandonment, this means that Plaintiffs need only demonstrate that the City failed to use Laurens for road purposes for 21 years—a lower standard than 21 years of nonuse. *Chillicothe*, 1995 WL 495959, at *12–15. The City's argument that abandonment cannot occur when a municipality exercises some control over the land at issue is not applicable when the municipality's interest was a fee simple determinable, and the municipality failed to satisfy the condition to secure its interest. *See Callen*, 64 N.E. at 143 (explaining that a similar grant of "land designated or intended for streets" vested in the municipality a fee simple determinable, such that "what [was] granted to the city [was] held in trust for the uses intended, viz. for street uses, and street uses only"). To hold otherwise would ignore the critical difference between a fee simple determinable and a fee simple absolute.

        ii.      The City's approval of the GA plat evinced its intent to abandon Laurens.

Plaintiffs argue that the City's approval of the GA subdivision in 1927, which prevented Laurens from meeting the county's 30-foot minimum to qualify as a "road," demonstrates the City's intent to abandon Laurens. (ECF No. 29-1, PageID #489). Plaintiffs rely largely on *Shemo*. (*Id.*). There, land was dedicated to a municipality for street purposes. *State ex rel. Shemo v. Mayfield Hts.*, 765 N.E.2d 345, 354 (Ohio 2002). After that dedication, the municipality approved a subdivision which blocked access to the never-constructed streets. *Id.* The court determined that approval of a subdivision which blocked access to never constructed streets evinced the municipalities intent to abandon those streets. *Id.*

11

Plaintiffs' reliance on *Shemo* is persuasive. Just like in *Shemo*, the City accepted land for road purposes, then approved an adjacent subdivision that prevented it from using Laurens for road purposes. *Id.*; (ECF No. 29-1, PageID #484). The City argues that this case is distinguished because: (1) the municipality in *Shemo* did not claim ownership of the paper streets until declaratory judgment proceedings when evidence concerning them was presented; and (2) unlike the streets in *Shemo*, access to and through Laurens has not been blocked; its width has just been limited. (ECF No. 31, PageID #684). But the court in *Shemo* did not indicate that the municipalities failure to claim ownership until the declaratory judgment phase would have changed its analysis. In fact, the evidence in *Shemo*, particularly the approval of the adjacent subdivision, established that the municipality abandoned the street long before the litigation. *Shemo*, 765 N.E.2d at 68.

The City's attempt to distinguish *Shemo* because Laurens is not "blocked" is likewise unconvincing. The City's argument relies on the fact that Laurens can still be used for road purposes as long as people can walk through it to travel "to and from Newberry." (ECF No. 31, PageID #684). Adopting the City's position would lead to an absurd result: The City could exercise unlimited control of the land—here, a mostly unpaved strip of grass—for purposes completely unrelated to roads as long as it maintained a width wide enough for a person to walk through. (*See* ECF No. 31-1, PageID #744–46). As explained below, "road purposes" does not have such an expansive meaning.

> iii. *The contingency that the City use Laurens for road purposes failed regardless of when the City installed the water main.*

Plaintiffs argue that the City's acceptance of the GA plat, and its 21 years of non-use for road purposes, prove that the City abandoned its fee simple determinable interest in Laurens. (ECF No. 29-1, PageID #489; ECF No. 1-4, PageID #34; ECF No. 29-3, PageID #523). The City argues

12

that it did not abandon Laurens because its use of a water main below Laurens, coupled with the public's use of Laurens as a footpath, qualifies as a "road purpose." (ECF No. 31, PageID #679–83). The City also alleges that it installed the water main under Laurens in 1927 and supports that assertion with an affidavit from Fred Roberts, a Consulting Engineer with the City of Cleveland's Division of Water. (ECF No. 28, PageID #309; ECF No. 28-2, PageID #376). Plaintiffs, using an updated affidavit from Roberts, assert that the City did not install the water pipe until 1958. (ECF No. 36, PageID #1070; ECF No. 35-1, PageID #1044). The City, aware of Roberts' second affidavit, provided no additional evidence to support its assertion that it installed the water main before 1958 in its reply in support of its motion for summary judgment. (ECF No. 35, PageID #32). Instead, the City argues that the precise date that the City installed the water main is immaterial because the Plaintiffs' predecessors-in-interest failed to exert any right to Laurens. (*Id.*).

The exact date that the City installed the water pipe is not a material fact because a water main is not a use for "road purposes." Plaintiffs and the City allege different definitions of "road purposes." Plaintiffs argue that this Court should consider the Rosemere Plat and the City's own road ordinances which, in 1916, required all roads to have minimum width of 30 feet, to determine whether the City is using Laurens for road and highway purposes. (ECF No. 29-1 PageID #492). The Rosemere Plat demonstrates that when Kleinman dedicated Laurens, they expected Laurens to be 50 feet wide, just like the other four roads in the Rosemere Subdivision. (ECF No. 1-4, PageID #35). It also shows that, to be 50-feet wide, Laurens would have to include land from what later became the GA plat. (*Id.*).

The City urges the Cout to adopt the definition of "road purposes" found in *Smith*, *Ziegler*, and the definition of "highway" in *Ballentine's Law Dictionary* (3rd ed. 2010). (ECF No. 35,

13

PageID #1033–34).  First, neither *Smith* nor *Ziegler* are applicable here because, in both cases, a city sought to use an *existing* road for a purpose that was *in addition to* its use as a road.  *See Smith v. Cent. Power Co.*, 137 N.E. 159, 161–162 (Ohio 1921) (granting the city discretion to grant easements to public utilities for electricity transmission in land designated for roads, but limiting that discretion such that the city cannot divert the public highways to purposes other than well-recognized street and highway purposes); *Ziegler v. Ohio Water Serv. Co.*, 247 N.E.2d 728 (Ohio 1969) (denying petitioners request that the court enjoin the defendant from, or require defendant to compensate plaintiff for, installing a water main underneath a highway that was subject to an existing easement for highway purposes).  Neither *Ziegler* nor *Smith* answered the question of whether utility lines beneath land independently qualify as use for "road purposes" to satisfy the contingency of a fee simple determinable interest.  *See id.*; *Smith* 137 N.E. 159.  Plaintiffs do not contest the validity of an easement for a water main underneath Laurens; they contest that a water line can independently satisfy Kleinman's contingency that the City use Laurens for road purposes.

The City also argues that this Court should adopt the definition of "highway" from Ballentine's law dictionary.  (ECF No. 35, PageID #1033).  Ballentine's law dictionary defines "highway" as a "generic term, including all public roads and ways."  Highway, *Ballentine's Law Dictionary* (3rd ed. 2010).  A dictionary definition is unnecessary when the context and four corners of a conveyance give unambiguous meaning to a word.  *Cleveland Botanical Garden v. Worthington Drewien*, 216 N.E.3d 544, 550.  The Court does not need a dictionary to understand what Kleinman meant when it dedicated Laurens for road purposes—Kleinman made that clear when it drew Laurens in the Rosemere Plat as a 50-foot-wide road just like the other four in the Rosemere subdivision.  (ECF No. 1-4, PageID #35).

The law, the record, and common sense all support this Court using Plaintiffs' definition of "road purposes." The County defined "road" in 1916 and required that roads be, at minimum, 30 feet wide. GC § 6861; (ECF No. 29-4, PageID #535). Kleinman, when it granted Laurens to the City for highway purposes, demonstrated its intent with the Rosemere Plat, in which it drew Laurens as having the same 50-foot width as the four other roads in the subdivision. (ECF No. 1-4, PageID #35). Now, in 2025, the pictures of Laurens speak for themselves. It is not a road; it is a dirt driveway with patches of grass. (ECF No. 28-1, PageID #373–74).

The City next argues Kleinman and the City contemplated Laurens being less than 30 feet wide because they described Laurens as "Laurens Avenue, 25 ft. wide" in the original dedication. (ECF No. 28, PageID #314). The map of the Rosemere subdivision demonstrates Kleinman's intent to donate 25 feet of what would eventually be a 50-foot-wide road. (ECF No. 1-4, PageID #35). The map of the Rosemere subdivision included in the dedication highlights only half of Laurens. *Id.* The other half was not included in that dedication. (*Id.*). The map still marks Laurens as 50 feet wide, demonstrating that while Kleinman only dedicated a 25-foot-wide strip of land at that time, it originally intended for Laurens to be to be 50 feet wide. (*Id.*). The Rosemere Plat also demonstrates that Kleinman dedicated a small portion of Green Road, despite the map showing that Green would be a 60-foot road because it required more land than what Kleinman donated in the Rosemere subdivision. (*Id.*). These similarities between Laurens and Green render insignificant the initial description of Laurens as "25 ft. wide."

> iv. *The City's interest in Laurens reverted as a matter of law by no later than 1948.*

While Kleinman's dedication did not specify exactly how long the City had to use Laurens for road purposes, this Court finds that applying the 21-year minimum required to prove abandonment is sufficient. *See State ex rel. Shemo v. Mayfield Hts.*, 765 N.E.2d 345, 354 (Ohio

15

2002). Holding otherwise would defeat the purpose of a fee simple determinable and allow the City to keep its interests indefinitely with hope that it would use them eventually. To require Plaintiffs to bring a claim for abandonment and assert their right to Laurens is inappropriate. It would convert a fee simple determinable to a fee simple subject to a condition subsequent, which *Callen* does not support.[2]

The City failed to use Laurens for road purposes. Their interest likely reverted in 1927 when the City prevented Laurens from being used for road purposes by approving the GA plat. If it did not revert in 1927, then it reverted by no later than 1948, 21 years after their approval of the GA plat limited Laurens' width to 25 feet. Both laches and the statute of limitations are irrelevant because the interest reverted as a matter of law, and did not require any action by the Plaintiffs or their predecessors in interest. Accordingly, Plaintiffs motion for summary judgment is **GRANTED**, and the City's motion for summary judgment regarding abandonment is **DENIED**.

### B. Equal Protection

The City argues that it is entitled to summary judgment on Plaintiffs' equal protection claim. The City argues that Plaintiffs are not similarly situated to Dawson or other landowners that the City vacated streets to because none of the other vacated streets were regularly used as footpaths or had a water main beneath. (ECF No. 35, PageID #1037). The City also vacated that land to other landowners at least 18 years ago. (*Id.*). The City asserts that Plaintiffs cannot prove the City acted with animus and relied on irrelevant statements made by the assistant prosecutor, who is not a City official with decision-making authority. (ECF No. 35, PageID #1036–42).

---

[2] A fee simple subject to a condition subsequent is a conveyance where, upon occurrence of a stated event, the conveyor or his successor in interest has the right to re-enter. Unlike a fee simple determinable interest, an interest in fee simple subject to a condition subsequent does not revert as a matter of law; it reverts only when the conveyor or his successor in interest asserts his right to the property. *Murray v. Trs. of Lane Seminary*, 140 N.E.2d 577, 581 (Ohio C.P. 1956).

Plaintiffs argue that the water main beneath Laurens is not enough to distinguish Plaintiffs from other landowners that the City vacated landowner-property-abutting roads to because the City regularly vacates property, conditional on reservation of a utility easement for the City. (ECF No. 32, PageID #859–62). Plaintiffs also argue that they can demonstrate animus or ill-will because the City: (1) "allowed itself to be guided by someone who accused Plaintiffs of being racist and engaging in suspicious potentially criminal activity"; (2) threatened the Plaintiffs with criminal prosecution if they failed to comply with the City's order to maintain and repair the property; and (3) "destroyed the evidence of its neglect" after litigation commenced under the guise of caring for the Strip. (ECF No. 32, PageID #863–63).

To succeed on an equal protection as a suspect class or class-of-one basis, a plaintiff must show disparate treatment of similarly situated persons. *See Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 684 (6th Cir. 2016); *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011). Equal protection plaintiffs must prove relevant similarity: that all relevant aspects of their situation are nearly identical to the persons to whom they compare themselves. *See EJS Props., LLC v. City of Toledo,* 698 F.3d 845, 865 (6th Cir. 2012); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Disparate treatment of individuals is reasonably justified if they are dissimilar in some material respect. *TriHealth, Inc. v. Bd. of Comm'rs,* 430 F.3d 783, 790 (6th Cir. 2005). Individuals making a request to a decision-making board are dissimilar in a material respect if they submit their requests during different time periods and to different boards. *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002).

The most significant difference between Plaintiffs and the parties they compare themselves to is *when* each party asked the City to vacate property. The City vacated the portion of Laurens

17

abutting Dawson's property in 1961. (ECF No. 29-5, PageID #553). Plaintiffs point to four instances where the City vacated landowner-property-abutting roads to the landowners: in 1975, 1986, 1991, and 1992. (ECF No. 32, PageID #860–861). Plaintiffs did not ask the City to vacate the Strip until Plaintiff Wilson sent the City a letter in 2010—18 years after the most recent vacation that Plaintiffs identified. (ECF No. 29-5, PageID #566). Plaintiffs have not shown that the people deciding whether to vacate land in 2010 are the same as those making the same decisions in 1992, or before. This difference alone demonstrates that the Plaintiffs cannot prove relevant similarity. The fact that none of the previously vacated properties have a water main beneath them or are used by the public as a footpath further distinguishes those properties from Laurens. (ECF No. 32, PageID #860–861). Accordingly, the City's motion for summary judgment is **GRANTED** as to Plaintiffs equal protection claim.

## IV. CONCLUSION

In summary, for these reasons, Plaintiff's motion for summary judgment is **GRANTED**. It is the judgment of this Court that the City abandoned any ownership of the Strip, and that Plaintiffs are the true owners of the Strip as described in the survey attached to the Complaint. The City's motion for summary judgment is **DENIED** as to abandonment, but **GRANTED** as to Plaintiffs' equal protection claim. Such claim is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Date November 25, 2025

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**